MAE JOHNSON SINEATH, Administratrix of W. P. SINEATH, A. G. HEARON, and A. G. HEARON, Surviving Partner, Trading as GOLDSBORO DRY CLEANERS & HATTERS, v. NICK J. KATZIS, MECHANICS & FARMERS BANK, R. L. McDOUGALD, Trustee, H. B. PARKER, Trustee, JOHN S. PEACOCK, Substituted Trustee, and H. B. PARKER and JOHN S. PEACOCK, Individually.

(Filed 30 April, 1941.)

**1. Appeal and Error §§ 37c, 38—**

On appeal in injunction cases the findings of fact by the judge of the Superior Court are not conclusive and the Supreme Court may review

SINEATH v. KATZIS.

the evidence, but there is a presumption that the proceedings below are correct and the burden is upon appellant to assign and show error.

2. **Judgments § 32—Prior adjudication is conclusive in subsequent action between same parties or those in privity with them.**

In a prior action between the same parties or those in privity with them, certain notes executed by plaintiffs were attacked for want of consideration. Judgment was entered, affirmed on appeal, that the notes were valid. *Held:* The prior adjudication precludes plaintiffs from attacking the notes on the ground of want of consideration, and, since plaintiffs assert no other equity for challenging the validity of the notes, the validity of the notes is established by the prior judgment, and the rights of the parties in the second action must be determined in accordance with such adjudication.

3. **Mortgages § 30b—Equitable owner of mortgage notes is entitled to request trustees to foreclose.**

Where the *cestui qui trust* endorses and assigns absolutely to another the notes secured by the deed of trust, and the assignee in turn assigns the notes as collateral security for his note to a bank in a sum less than the face amount of the mortgage notes, the assignee of the *cestui* is interested in the payment of the whole amount of the mortgage notes, the amount due him after payment to the bank as well as the amount due the bank as represented by his note, and he has an equitable interest in the notes and is entitled to request the trustees to foreclose the deed of trust notwithstanding that he does not have physical possession of the mortgage notes.

4. **Mortgages § 30a—**

In order for equity to restrain the foreclosure of a mortgage or a deed of trust to prevent injustice to the rights of a mortgagor or trustor or others interested in the property, there should be some equitable element involved, such as fraud, mistake, or the like.

5. **Injunctions § 11—**

As a general rule, a temporary restraining order will be dissolved upon hearing of the order to show cause when the answer denies the equity of the bill, unless injunctive relief is the main purpose of the action and not merely ancillary thereto.

6. **Mortgages § 30e—In this action for damages and to restrain foreclosure upon allegation that cestui is insolvent, dissolution of temporary order held without error upon defendants' denial of insolvency.**

Plaintiffs or their privities executed the notes in controversy, secured by a deed of trust, as part payment for a business purchased by them. Contemporaneously with the purchase of the business the president of the seller executed a noncompetitive covenant. In a prior action, binding upon the parties, it was adjudicated that the notes were not void for want of consideration but that they are valid and outstanding, and it was further adjudicated that the president had breached his noncompetitive covenant and that plaintiffs were entitled to nominal damages for such breach. In this action to recover damages for subsequent breach of the noncompetitive covenant, plaintiffs sought to restrain the foreclosure of the deed of trust. *Held:* The validity of the notes having been concluded by the former judgment and there being no controversy as to the amount

thereof, and the injunctive relief sought by plaintiffs being merely ancillary to the main purpose of the action to recover damages for breach of the noncompetitive covenant, and the allegation of insolvency of the *cestui* having been denied, the dissolution of the temporary order upon the hearing of the order to show cause was without error.

SEAWELL, J., dissenting.

CLARKSON, J., concurs in dissent.

APPEAL by plaintiffs from *Nimocks, J.,* at November Term, 1940, of WAYNE.

Civil action to recover of defendant Katzis damages for breach of noncompetitive agreement, and to enjoin foreclosure of deed of trust securing purchase money notes executed in sale of laundry in connection with which said agreement was executed.

This appeal is from order dissolving order which temporarily restrained foreclosure sale under the deed of trust. The basic facts involved are fully stated in the opinion of this Court in former action between same parties, and others, filed 8 January, 1941, and reported in 218 N. C., 740, 12 S. E. (2d), 671, subsequent to institution of present action.

Briefly stated, the facts there, in so far as pertinent to this appeal, are these: The plaintiffs sought to have canceled notes aggregating $10,900 executed by them and payable to Goldsboro Dry Cleaners & Hatters, Inc., as the unpaid part of balance of purchase price for all its assets, including good will, as well as the deed of trust executed by them to H. B. Parker and Paul B. Edmundson, Trustees, as security for said notes, which were endorsed by Goldsboro Dry Cleaners & Hatters, Inc., to Nick J. Katzis at the time and as a part of the transaction involving the sale. The alleged ground for cancellation was failure of consideration in that Katzis had breached his noncompetitive agreement entered into as a part of the same transaction. Plaintiffs there also alleged damages by reason of said breach. Katzis denied any breach of his agreement and, in cross action, averred that Sineath and Hearon were indebted to him in the sum of $10,900, and interest, as evidenced by said notes.

Mechanics and Farmers Bank of Durham, North Carolina, and R. L. McDougald, Trustee, were brought in as additional parties defendant to that action, for that the bank was asserting right to possession of said notes, which it averred had been assigned to it by Katzis as collateral security to his note for $2,463.07, as set forth in deed of trust executed to R. L. McDougald, Trustee. Plaintiffs there alleged and contended that whatever rights the bank had in said notes were acquired from Katzis, and were subject to superior right of plaintiffs against Katzis to have same canceled and surrendered. The bank and trustee denied

this allegation and contention, and set up cross action upon the note and deed of trust given by Katzis by which the notes of plaintiffs were assigned by Katzis to the bank.

In the trial court, the jury found that Katzis had breached his non-competitive agreement and that plaintiffs had been damaged in a nominal amount. Also in response to the fifth issue, "In what amount, if any, are plaintiffs indebted on the notes referred to in the complaint?" the jury answered: "$10,900 and interest." Upon verdict on that issue judgment was entered "that the plaintiffs, W. P. Sineath and A. G. Hearon, as represented by the notes . . . and secured by a deed of trust (describing it), are indebted to the defendant Nick J. Katzis in the sum of $10,900, with interest . . . subject to the assignment to R. L. McDougald, Trustee, hereinafter referred to." The court further decreed "that R. L. McDougald, Trustee, and Mechanics and Farmers Bank of Durham . . . be and they are hereby declared to be the owners of, and entitled to the possession of thirty-six notes, aggregating $10,900, referred to in the complaint filed in this cause, and the deed of trust to Paul B. Edmundson and H. B. Parker, Trustees, whereby said notes are secured, and for the purposes set forth in the deed of trust . . . to the end that the proceeds from the collection of said notes shall be applied, first, in payment of the indebtedness due said Mechanics and Farmers Bank by Nick J. Katzis, and the balance to be paid over to Nick J. Katzis, or his order, as provided in said deed of trust." The judgment was affirmed on appeal to this Court.

In the present action plaintiffs allege in effect that since the date of institution of the former action, Nick J. Katzis has further violated and breached the same noncompetitive agreement, that such breach also constitutes failure of consideration for the same notes, that by reason of such failure of consideration the same notes should be canceled, and that the pending sale by foreclosure under their deed of trust to H. B. Parker and Paul B. Edmundson, Trustees, should be enjoined, as "unlawful and violative of the plaintiffs' rights for the reason (a) that nothing is due on said deed of trust or the notes secured thereby, and (b) because no holder of said notes has requested the trustees to offer said property for sale under said deed of trust," that the sale of the property, if consummated, would irreparably injure the plaintiffs, and that Nick J. Katzis is insolvent. Plaintiffs by reference incorporate the deed of trust in their complaint, and allege that by proper proceeding John S. Peacock has been substituted as Trustee for Paul B. Edmundson. Plaintiffs further allege that, before the date of sale, defendants, Mechanics and Farmers Bank and R. L. McDougald, Trustee, withdrew their request for said foreclosure, and, further upon information, allege that no holder of said notes at any time requested the foreclosure.

Defendants plead *res judicata,* and deny plaintiffs' allegations that Katzis has breached his noncompetitive agreement, that plaintiffs have been damaged, and that Katzis is insolvent, and further deny right of plaintiffs to injunctive relief. And, while defendant bank and Mc-Dougald, Trustee, admit withdrawal of request for foreclosure, defendants Katzis and Parker and Peacock, Trustees, aver that prior to the time the property was advertised by the trustees, said Katzis requested the foreclosure, and that by the terms of the deed of trust, by reason of default in payment, the entire indebtedness is due and unpaid and defendant Nick J. Katzis is entitled to have the trustees offer the property for sale, and execute a deed to last and highest bidder.

Otherwise, this action is identical with the former action.

Upon the complaint as filed the court issued a temporary injunction against sale by foreclosure, and an order to the defendants to show cause why the same should not be continued to the final hearing. Upon the hearing thereon the plaintiffs offered in evidence as an affidavit the complaint and replies filed herein. The defendants Katzis and Parker and Peacock, Trustees, offered in evidence as affidavits the answer filed by them and also the complaint, the answer of Nick J. Katzis, Letha White and White's Laundry and Cleaners, Inc., and the judgment in the former action, together with transcript therein of the testimony of W. P. Sineath and A. G. Hearon. "The court finding that the plaintiffs are not entitled to have the temporary restraining order herein continued to the final hearing of the cause," entered judgment dissolving same.

Plaintiffs appeal therefrom and assign error.

*Royall, Gosney & Smith, Paul B. Edmundson, and James Glenn for plaintiffs, appellants.*

*J. Faison Thomson and J. A. Jones for defendants, appellees.*

*Claude V. Jones for Mechanics and Farmers Bank and R. L. McDougald, Trustee, appellees.*

WINBORNE, J. In their brief filed on this appeal plaintiffs contend that the judge below erred in dissolving the temporary restraining order for these reasons: (1) That the trustees have no authority to foreclose the deed of trust upon demand of defendant Katzis. (2) That there is nothing due by the plaintiffs on the indebtedness secured by the deed of trust sought to be foreclosed.

While the findings of fact by the judge of Superior Court are not conclusive on appeal in injunction cases "in which we look into and review the evidence, . . . still there is a presumption always that the judgment and proceedings below are correct and the burden is upon appellant to assign and show error." *Hyatt v. DeHart,* 140 N. C., 270,

52 S. E., 781; *Plott v. Comrs.,* 187 N. C., 125, 121 S. E., 190.

Upon consideration of the pleadings and evidence in the present case as shown in the record and case on appeal, we are of opinion, and hold, that appellant fails to show error in the judgment below.

The notes, secured by the deed of trust here involved, are the same notes as those involved in the former action. There the plaintiffs contended that by reason of the breach by Nick J. Katzis of his noncompetitive agreement there was failure of consideration for the notes. But there the jury found that plaintiffs are indebted on those notes in the sum of $10,900, and interest. Upon that verdict the court adjudged that W. P. Sineath and A. G. Hearon are indebted to Nick J. Katzis in the sum of $10,900, with interest, subject to the assignment to R. L. McDougald, Trustee. The judgment was affirmed on appeal to this Court. 218 N. C., 740, 12 S. E. (2d), 671. The opinion there concludes with these two sentences: "Having held that there is no error with respect to the issue of damages, we deem it unnecessary to enter into a discussion of failure of consideration proffered by plaintiffs. It is sufficient to say that, on the facts presented, plaintiffs' remedy is properly based on claim for damage."

The question of failure of consideration for those notes, therefore, may not again be raised by W. P. Sineath and A. G. Hearon, and those standing in privity to them, as do plaintiffs in the present action. Plaintiffs assert no other equity for challenging the validity of the notes. Hence, the notes stand as valid obligations of the makers secured by the deed of trust in question.

Now, with regard to the right of defendant Katzis to request the trustees to foreclose the deed of trust: The judgment in the former action recognizes that said Katzis has an equity in and to the notes in question. Recurring to the factual situation, bear in mind that the notes were executed by W. P. Sineath and A. G. Hearon and payable to Goldsboro Dry Cleaners & Hatters, Inc., and by it assigned absolutely to Nick J. Katzis, who in turn assigned them to R. L. McDougald, Trustee for Mechanics and Farmers Bank of Durham, as collateral security for an indebtedness less in amount than the face value of the notes. While the court adjudged that said trustee and bank are the owners and entitled to the possession of the notes "for the purposes set forth in the deed of trust," it is provided that this is to "the end that the proceeds from the collection of said notes shall be applied, first, in the payment of the indebtedness due said Mechanics and Farmers Bank by Nick J. Katzis, and the balance to be paid over to Nick J. Katzis, or his order," that is, that W. P. Sineath and A. G. Hearon are indebted to Katzis for the face amount of their notes, $10,900, with interest, subject to the payment to the bank of the amount of his note, $2,463.07, to which as collateral

security he assigned the Sineath and Hearon notes. By such assignment of these notes as collateral security for his own debt of less amount than the face value of the notes, Katzis does not lose his interest in the deed of trust by which the notes are secured. 41 C. J., 681 and 882. *Hughes v. Johnson,* 38 Ark., 285. While it may be true that Katzis does not have physical possession of the notes, he had the right, unless otherwise agreed, to call upon the trustees to foreclose the deed of trust. He is interested in the payment of the whole amount, not only that which is due to him but that to which the bank is entitled, as represented by his note. The record contains no restriction upon his right to request foreclosure.

The court has the power to restrain the exercise of the power of sale under a mortgage or deed of trust where a sale thereunder would work an injustice to the rights of the mortgagor or trustor or others interested in the property; but there should be some equitable element involved, as fraud, mistake, or the like. For example, the sale will be restrained when there is serious controversy as to the amount actually due on the indebtedness secured by the mortgage or deed of trust, so that the debtor or those claiming under him may know the proper amount and pay without a sacrifice of property. McIntosh, N. C. P. & P., 980; *Bridgers v. Morris,* 90 N. C., 32; *Broadhurst v. Brooks,* 184 N. C., 123, 113 S. E., 576.

In the present state of the instant case there can be no controversy as to the validity, and there is none as to the amount of the notes in question. Furthermore, where the answer denies the equity of the bill, the general rule is that the injunction will be dissolved. When, however, the injunctive relief sought is not merely ancillary to the principal relief demanded in the action, but is of itself the main relief, the court will not dissolve the injunction, but will continue it to the hearing. *Cobb v. Clegg,* 137 N. C., 153, 49 S. E., 80; *Hyatt v. DeHart, supra; Boone v. Boone,* 217 N. C., 722, 9 S. E. (2d), 383.

In the present case, when stripped of the allegations of failure of consideration for the notes, the main relief sought is recovery of alleged damages for alleged breach of contract, to which injunction against foreclosure of the deed of trust is merely ancillary.

Upon careful consideration, the record fails to show cause for disturbing the ruling of the judge of Superior Court.

Hence, the judgment below is

Affirmed.

SEAWELL, J., dissenting: I think the main opinion fails to apprehend the real issue in the controversy between the parties upon which decision should rest. Whatever other claims the plaintiff may have, and however

vigorously they may have been projected into the argument of the case, the fact remains, upon a proper showing, that there is sufficient in her pleading and in the record history of the case to entitle her to equitable set-off or recoupment against whatever interest the defendant Katzis may have, and that it is within the power of the Court, in the exercise of its equity jurisdiction, to make orders to protect the corporate defendant in whatever interest it may have, so that the major equity—the protection of the plaintiff in the assertion of her claim and a proper hearing there-upon—may be achieved. The case has been viewed merely as another attempt to attack the note now held by the bank (of which Katzis is the equitable owner), and defeat it for want of consideration, and the decision is based upon the principle of *res adjudicata.* But the pleadings and the brief of plaintiffs present to us the question of equitable set-off, which has nothing to do with a failure of consideration or any adjudication which has been made upon the note.

We have advanced from the common law, where no set-off was recognized, to statutory set-off or counterclaim, as provided in the statute, C. S., 521, where an action has been brought for the enforcement of contrary demands, but that is by no means the end of the law. It is familiar learning that a judgment, and, *a fortiori,* the foreclosure of a mortgage, may be enjoined and stayed where to enforce either would be unjust, and especially where because of the relation of parties and the connection between the items of indebtedness on either side the enforcement of the demand would be inequitable. There is presented here a situation which, according to the practice of the courts, has been considered peculiarly a subject of equity jurisdiction.

For convenience, I use the name "Sineath" to represent the plaintiffs, and "Katzis" to represent the defendants, unless it otherwise appears.

On 1 February, 1937, Katzis sold to Sineath his business as Goldsboro Cleaners and Hatters, Inc., in the town of Goldsboro, consisting of the good will of the business and a quantity of stock and equipment suitable for carrying it on. Katzis agreed not to engage in that business within Wayne County for a period of fifteen years from that date. Sineath paid $10,000.00 in cash and executed several notes aggregating $20,200.00, and to secure these notes he executed a deed of trust or mortgage on the stock and equipment. Subsequently, Katzis borrowed money from the Bank of Wayne and assigned the Sineath note and mortgage in security. There is now due upon this mortgage the sum of $10,900.00, and the interest of the Bank of Wayne is approximately $2,463.07.

Almost immediately after this transaction, Katzis opened up the same kind of business in the town of Goldsboro, operating through other parties. Sineath enjoined Katzis from further prosecution of the business and asked that his note be delivered up and canceled because of the

breach of the contract and for total failure of consideration, and for damages for the breach of the contract.

Upon the trial of this case the jury found that the contract was breached, and, under the instruction of the court, awarded nominal damages. As to the note, an issue was submitted upon which it was found that Sineath was indebted thereon as appeared in the note. The bank was held to be owner and holder in due course, by reason of the assignment. The injunction against Katzis with regard to prosecution of the business was continued. On appeal to this Court the judgment was upheld. *Sineath v. Katzis,* 218 N. C., 740.

Afterward, plaintiff instituted the present action, alleging further breaches of the contract on the part of Katzis since the trial of the former case, obtained an injunction against the enforcement of the deed of trust or mortgage, and sought to have such damages as might be awarded applied in offset or recoupment against the note. It is alleged that the defendant is insolvent.

In the court below, the injunction against the enforcement of the mortgage, pending a hearing, was dissolved and plaintiffs appealed.

At the time of the purchase of the business, the contract between Sineath and Katzis, of which the note was a part, was executory, or continuing, both with respect to the payment of the purchase price on the part of Sineath, and the performance on the part of Katzis of his agreement to refrain from carrying on the business. Except as partly performed on the part of Sineath, and, further, as qualified by the former trial, the mutual performance of this contract is still a matter for the court when its jurisdiction is properly invoked, with the rights of the parties to be adjusted as far as may be done under established rules of law and equity.

Leaving aside all extraneous matter, I return to the question: Are plaintiffs entitled to equitable set-off or recoupment for losses or damages sustained since the former trial, through breach of the contract, as against whatever interest the defendant Katzis may now have in the note and mortgage given for the purchase price?

As stated, the question of failure of consideration of the note as between Sineath and Katzis is not involved in the question of set-off. The right of set-off or recoupment would exist in favor of the plaintiffs, notwithstanding any adjudication in that respect, which did not include the subject matter of the proposed set-off. It becomes a question whether there are now legal or equitable means to enforce it.

Insolvency on the part of one who seeks to enforce a claim against a judgment debtor-creditor has long been recognized as raising the right of equitable set-off to secure justice between the parties. *Schuler v. Israel,* 120 U. S., 506, 30 L. Ed., 707; *North Chicago Rolling Mill Co. v. St.*

*Louis Ore & Steel Co.,* 152 U. S., 596, 38 L. Ed., 565; *Citizens Bank v. Kendrick,* 92 Tenn., 437, 21 S. W., 1070.

Upon this point I quote from 24 R. C. L., p. 807, section 15: "In order to effect an equitable set-off it is well settled that equity has jurisdiction to restrain a judgment creditor from collecting his judgment against the judgment debtor, until a claim of the latter against the former has been judicially established, and then to permit an equitable offset of the one against the other, where the judgment creditor is either insolvent or has no property out of which the judgment debtor can collect his claim" . . .

In *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., supra,* the plaintiff obtained an injunction against the defendant to restrain the enforcement of a judgment under circumstances similar to those in the case at bar. The opinion of the Court denied the plea of the defendant that the claim of the plaintiff in equity was unliquidated and disposed of the other matters at issue as follows: "Again, it is well established that equity will entertain jurisdiction and afford relief against the collection of a judgment where in justice and good conscience it ought not to be enforced, as where there is a meritorious, equitable defense thereto, which could not have been set up at law, or which the party was, without fault or negligence, prevented from interposing. Illustrations of these general principles are found in the cases of *Leeds v. Marine Ins. Co.,* 19 U. S. 6 Wheat. 565 (5 :332); *Scammon v. Kimball,* 92 U. S., 362 (23 :483); *Crim v. Handley,* 94 U. S., 652 (24 :216); *Embry v. Palmer,* 107 U. S., 3 (27 :346); *Knox County v. Harshman,* 133 U. S., 154 (33 :586); *Marshall v. Holmes,* 141 U. S., 589 (35 :870).

"By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference. *Leeds v. Marine Ins. Co.,* 19 U. S., 6 Wheat. 565 (5 :332); *Lindsay v. Jackson,* 2 Paige, 581; *Gay v. Gay,* 10 Paige, 369; *Pond v. Smith,* 4 Conn., 302; *Robbins v. Holley,* 1 T. B. Mon., 194; *Hinrichsen v. Reinback,* 27 Ill., 295; *Raleigh v. Raleigh,* 35 Ill., 512; *Hall v. Kimball,* 77 Ill., 161; *Chicago D. & V. R. Co. v. Field,* 86 Ill., 270; *Doane v. Walker,* 101 Ill., 628; *Davis v. Milburn,* 3 Iowa, 163; *Tuscumbia R. Co. v. Rhodes,* 8 Ala., 206; *Wray v. Furniss,* 27 Ala., 471; *Keightley v. Walls,* 27 Ind., 384; *Wulschner v. Sells,* 87 Ind., 71; *Laybourn v. Seymour* (Minn.), April 27, 1893; *Rothschild v. Mack,* 115 N. Y., 1; *Richards v. La Tourette,* 119 N. Y., 54; *Schuler v. Israel,* 120 U. S., 506 (30 :707)."

Where it is shown that the right of equitable set-off exists in behalf of the plaintiff by reason of matters happening since the judgment, and the defendant is insolvent, that right may be protected by injunction against further proceeding even after execution has been issued upon

the judgment. *Wiggin v. Janvrin,* 47 N. H., 295; *Steere v. Stafford,* 12 R. I., 131; *Markey v. Markey,* 13 N. Y. S., 295; *Bass v. Chambliss,* 9 La. Ann., 376.

Some early cases, much outweighed and largely abandoned in the development of this subject, are to the effect that the insolvency of a party alone will not give rise to the equitable jurisdiction. Amongst them is *Riddick v. Moore,* 65 N. C., 382. The latter case is not followed in this respect by subsequent cases.

At any rate, insolvency has always been considered "a material circumstance to be considered in determining whether an equitable set-off should be allowed, and, when coupled with other matters, may authorize the allowance of the set-off." *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., supra; Dewey v. West Fairmont Gas Coal Co.,* 123 U. S., 329, 31 L. Ed., 179; *Cromwell v. Parsons,* 219 Mass., 299, 106 N. E., 1020; *Smith v. Smith,* 79 N. C., 455.

In this State the scope of this remedy has been enlarged by our statute declaring unliquidated demands connected with the transaction, out of which the action arises, to be proper matters of set-off.

Courts of equity have for a very long period of time entertained actions and provided a forum for equitable relief with regard to set-off, counterclaim, and recoupment, without the statutory authority later found necessary to make such relief available in courts of law. And they still proceed under that authority where, as here, their jurisdiction has not been curtailed by the statute. "Equity follows the law," and it can make no difference whether the matter pleaded as set-off is yet to be established. It is for that purpose equity creates the forum. A party who has the right of equitable set-off is not confined in asserting it to an action brought by the contrary party and his answer with respect thereto. Such a forum at law may not exist, but the party having the right may create the forum by appeal to a court of equity by way of injunction to stay the judgment or restrain the foreclosure of the mortgage until his countervailing claim is established. *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., supra.*

Recoupment, as included in the remedy generally classed as "set-off," has been variously defined in terms which distinguish it from a plea of failure of consideration: "The keeping back and stopping something which is due." *Fricke v. W. E. Fuetterer Battery, etc., Co.,* 220 Mo. A., 623, 288 S. W., 1000; Waterman Set-Off, 2nd Edition, 457. "The keeping back or stopping something which is otherwise due because the other party to the contract has violated some duty devolving upon him in the same transaction." *Nelson Co. v. Goodrich,* 159 Wash., 189, 292 P., 406, 408. "The keeping back of something that is due because there is an equitable reason to withhold it." *Michigan Yacht, etc., Co. v. Busch,*

143 Fed., 929, 936. "A *quasi* offset of counterclaims not liquidated." *Barber v. Chapin,* 28 Vt., 413, 416. The distinctions between recoupment, offset and counterclaim are of no practical value excepting as showing the intimate connection of this form of offset with the demand made by the other party and, therefore, its equitable implication. It proceeds on the equitable principle that because of the acts of the other party to the contract who seeks to enforce the obligation, the party who seeks relief by way of set-off has been denied the full enjoyment of the right he has purchased, and has been thereby damaged. It is, in itself, equitable in its nature. *Johnston v. Grimm,* 209 Iowa, 1050, 229 N. W., 716; *Bryne v. Dorey,* 221 Mass., 399, 109 N. E., 146.

No one can contend that it is fair or just to permit the defendant to continue in the enjoyment of the full measure of the purchase price received for the good will of the business, when in open violation of his contract, and in defiance of the injunction of this Court, he continues to engage in the business from which he has solemnly contracted to desist, and thereby deprives the plaintiff of the very thing he agreed to deliver to him. Under the facts as they have been found, he has never completely delivered the good will of the business. He now seeks to take away the physical stock and equipment. After paying around $20,000.00 of the purchase price, there is little left to the plaintiff but a lot of experience.

It may be conceded that there are instances of wrong where no remedy is provided. If so, a court of equity should not be astute to find them or multiply them.

In formulating its judgments the Court has power to protect the interests of all persons before it. The right of the bank to realize on its collateral cannot be questioned. An order should be made either requiring that this money should be paid to the bank, or that a sufficient bond be given to protect it against loss. Upon such condition, the injunction should be continued to the hearing.

CLARKSON, J., concurs in dissent.