[No. 2160–3.  Division Three.   April 26, 1978.]

DUANE A. WOLLEY, ET AL, *Respondents,* v. RICHARD L. BUTTS, ET AL, *Appellants.*

*Kelly Hancock, P.S.,* for appellants.

*Patrick J. Morrissey* and *Mansfield, Morrissey & Thomas,* for respondents.

GREEN, J.—The trial court granted specific performance of an earnest money agreement in favor of the plaintiffs, Duane and Kim Wolley, the purchasers of a home. Defendants, Richard and Maxine Butts, the sellers, appeal.

No error having been assigned to the findings of fact, we accept them as verities.

The following findings are pertinent to this appeal:

II.

That during the week of February 15, 1976, Plaintiffs and Defendants met together at Defendants' residence, and Plaintiffs agreed to purchase from Defendants and Defendants agreed to sell to Plaintiffs [certain real property owned by the Defendants] for a cash purchase price of Fifteen Thousand and no/100 ($15,000.00) Dollars. That Plaintiff and Defendant did execute such an agreement in writing by signing a form Earnest Money Agreement . . . marked Exhibit A. . . . That prior to affixing their signatures the parties filled in the blanks of said agreement with the exception of the date, amount of earnest money, and the name of the real estate agent. That at the time of the execution of this Agreement, the parties did intend to enter into and create an agreement incorporating the terms as set forth in Exhibit A.

. . .

III.

That on February 20, 1976, Plaintiffs received a telephone call from a Frank Fulford of Frank's Realty, Brewster, Washington, who advised Plaintiff that he was employed by Defendants to represent them in the transaction and close the sale of the foregoing . . . real property according to the terms of Exhibit A, and accordingly advised Plaintiffs to come to his office for this purpose.

IV.

That on February 20, 1976, following Frank Fulford's phone call, the Plaintiffs went to his office at Brewster, Washington. Plaintiffs delivered to Frank Fulford the executed Earnest Money Receipt and Agreement, whereupon Frank Fulford inserted into Exhibit A the date of February 20, the amount of earnest money, the name of his business, and address, and signed the same as agent. Mr. Fulford then indicated that three additional copies of the agreement were necessary so that a copy could be

distributed to each of the parties, himself, and the lending institution. He indicated that his copy machine was not operating, and therefore he would have to copy the original by hand in order to have sufficient copies. Frank Fulford thereupon copied the original by hand . . . on blank earnest money receipt and agreement forms, which he used in his business, and had in his possession. Upon completing the copies, Frank Fulford had Plaintiffs affix their signatures thereto, and provided Plaintiffs with the original Earnest Money Receipt and Agreement (Exhibit A) as their copy. Frank Fulford expressly represented to Plaintiffs that the copies he had made were identical to Exhibit A, and that the purpose of making the additional copies was to create duplicates of Exhibit A. That a copy of the Earnest Money Receipt and Agreement prepared by Frank Fulford is attached hereto, marked Exhibit B, and by this reference incorporated herein.

V.

The original Earnest Money Receipt and Agreement (Exhibit A) provided in Paragraph 8 thereof that the termination date of the agreement was 120 days from the date of the agreement, which would have been June 19, 1976. On the copies prepared by Frank Fulford he inadvertently inserted a period of 45 days from the date of the agreement as the termination date, which would have terminated the earnest money agreement on April 5, 1976. That said discrepancy was created by Frank Fulford inadvertently, and unknowingly and without intent or desire to modify the expiration date provided for in Exhibit A.

VI.

That pursuant to an appointment arranged by Frank Fulford, the Plaintiffs applied for financing with Columbia Federal Savings and Loan Association, Cheln [sic] Branch, Chelan, Washington, which loan was approved on or about April 12, 1976. The Plaintiffs thereupon tendered the purchase price in full to Defendants, and requested Defendants to close the transaction pursuant to the Earnest Money Agreement (Exhibit A) whereupon the Defendants refused to accept the purchase price tendered by Plaintiffs, and to transfer the property to Plaintiffs as agreed.

## VII.

That Defendants did during the week of February 15, 1976, employ Frank Fulford as their agent to represent them in the closing of the sale to Plaintiffs of the real property pursuant to the original Earnest Money Receipt and Agreement and directed Frank Fulford to contact Plaintiffs for this purpose. That Defendants did authorize Frank Fulford to represent Defendants in their transaction with Plaintiffs, and that all acts performed by Frank Fulford in the closing of the transaction including filling in the date and amount of earnest money receipt and agreement were authorized by Defendants and were within the scope of authority conferred upon Frank Fulford by Defendants.

## VIII.

That the terms set forth in Exhibit A, being the original Earnest Money Receipt and Agreement, reflected the terms of sale as intended by the Plaintiff, Defendant and Frank Fulford.

## IX.

That the Plaintiff has fully performed the terms of the earnest money agreement entered into by and between the Plaintiff and Defendant in accordance with the terms thereof, and in accordance with the terms thereof were, and now are, ready, willing, able and desirous of performing the same.

The only issue on appeal is whether these findings of fact support the trial court's conclusions of law.

The court concluded that (1) the parties entered into an "enforceable and binding contract, being an Earnest Money Receipt and Agreement, . . . marked Exhibit A;" (2) the agreement "evidenced by Exhibit B . . . was not intended to modify, amend or affect in any way the agreement reflected by Exhibit A, and accordingly the term and duration of the . . . agreement entered into . . . was 120 days;" and (3) the plaintiffs were willing and able to perform and had tendered the full purchase price, and the defendants breached the agreement by their refusal to perform. Accordingly, the court determined that the plaintiffs were entitled to specific performance.

■ First, defendants contend that since no written listing agreement or other written agreement existed between the defendant sellers and Mr. Fulford, Mr. Fulford could not bind the defendants by his insertion of the date and his receipt of the earnest money. For this position, defendants rely primarily upon the statute of frauds, RCW 19.36.010(5).[1] Very early, the court in *Peirce v. Wheeler,* 44 Wash. 326, 329, 87 P. 361 (1906), construing a predecessor statute, declared:

> We think it is manifest that the legislature intended to reach such contracts only as involve the relations of an owner and his agent with respect to the recovery of compensation or commission for services in selling or purchasing real estate. To hold that the statute was intended to require the authority of the agent to be in writing, so far as the rights of a vendor or purchaser who deals with the agent of another are concerned, would be to read into the statute something that is by no means either clearly or necessarily implied. The contract which the statute declares to be void unless in writing is one for the payment of a commission to the agent, but it does not say that the actual authority to sell or purchase must be in writing.

Again, in *Mele v. Cerenzie,* 40 Wn.2d 123, 125, 241 P.2d 669 (1952), an action for fraud by the seller against her real estate agent, the court held that the statute of frauds did not operate to bar the action because "The agreement which the statute declares void unless in writing is one for the payment of a commission to the agent, but it does not say that the actual authority to sell or purchase must be in writing."

Most recently, in *House v. Erwin,* 83 Wn.2d 898, 904, 524 P.2d 911, 915 (1974), an action by a broker to recover a commission from a seller, the court recognized that "the

---

[1]RCW 19.36.010 provides: "In the following cases . . . any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

fraud sought to be prevented by RCW 19.36.010(5) relates to disputes as to the amount of commission or compensation . . ." Thus, it is apparent that this provision of the statute was not intended to void the rights of a third party even though no written agreement was entered into by the broker and the seller. Defendants' contention to the contrary must fail.

Second, the defendants contend that Mr. Fulford had no authority to fill in the date and receive earnest money from the plaintiffs. This involves a question of fact. The court found that he had such authority. Finding of fact No. 7. Consequently, this contention must fail.

Affirmed.

McINTURFF and ROE, JJ., concur.